[No. A054280. First Dist., Div. Four. Oct. 28, 1991.]

MARINA PIERI, Petitioner, v.
THE SUPERIOR COURT OF MARIN COUNTY, Respondent;
KENNETH W. PIERI, Real Party in Interest.

**COUNSEL**

William M. Hilton for Petitioner.

No appearance for Respondent.

Vorsatz & Vorsatz and Paul F. Vorsatz for Real Party in Interest.

**OPINION**

**ANDERSON, P. J.**—Petitioner (mother) challenges an order of respondent court denying her motion to stay or dismiss a child custody matter on inconvenient forum grounds. We conclude that, under the totality of circumstances before respondent court, the court did not abuse its discretion in retaining jurisdiction to modify its decree.

Petitioner and Kenneth W. Pieri (father), real party in interest herein, were married in San Francisco in 1985. Their son, Nicholas, was born in San Francisco on April 6, 1986. In 1988, mother initiated divorce proceedings in California, and in August of that year, the parties entered into a stipulation regarding custody of Nicholas which was incorporated into the judgment of dissolution. The parties agreed that mother would have sole physical custody of Nicholas and would move to Switzerland where she had grown up. The parties agreed to share joint legal custody and to "share equally in the decision making regarding Nicholas's schooling, health and the importance of Nicholas continuing to maintain English as a primary language." The stipulation further provided that during the summer of 1989, mother would bring Nicholas to California for a visit of three weeks. In the summer of 1990, father would visit in Switzerland for one week and would bring Nicholas to California for a visit of up to four weeks. The visit to California would be for five weeks in the summer of 1991 and six weeks thereafter. An agreement for Christmas vacations was also included in the stipulation.

On August 22, 1990, father filed a motion to change custody and an order to show cause regarding contempt for violation of the visitation agreement. Declarations in support of his motion revealed that mother brought Nicholas to visit in California in the summer of 1989 in accordance with the provisions of the stipulation. Father then visited with Nicholas in Switzerland for a week in January 1990. During that time, Nicholas had great difficulty communicating with father in English. The visit scheduled for the summer of 1990 had been canceled by mother on the ground that she had been advised by Nicholas's pediatrician that a visit would be harmful to the child.[1] Father argued in his motion that he was convinced that his only chance of maintaining contact with his son was a change of custody.

On October 17, 1990, mother filed a responsive declaration and requested the matter be stayed "pending filing of proceedings in Switzerland . . . and resolution in that forum." After various proceedings which need not be detailed here, the inconvenient forum issue was heard on June 14, 1991. The court had before it a declaration of mother which set forth a "partial list" of

---

[1]This information was conveyed by mother's Swiss attorney to father's attorney in a letter urging the importance of temporarily postponing visitation rights because Nicholas was "deeply disturbed and upset." The letter stated in part: "That doesn't mean that your client should not see his son any more. It simply means that in the present situation, it is imperative to postpone his father's visitation rights. It is essential that the child grows up as well as possible in his present familial context. [¶] Nicholas is a very sensitive child. It is not useless to remember that he was perturbed very much when his father visited him last February and that the doctors noticed that Nicholas behaved in an abnormal way. [¶] Thinking of going back to the United States and join [sic] his father, Nicholas was deeply disturbed and upset. He looked so anxious that specialists for children agreed to incite [sic] his mother for not going back to the US."

12 witnesses whose testimony mother contended should be considered in determining custody. On the list were Nicholas's pediatrician and pedo-psychiatrist, teacher and family and friends. Mother pointed out the expense and difficulty of transporting the witnesses to California and the difficulty of obtaining a proper psychological evaluation of herself and Nicholas in California. The declaration further stated that father had come to Switzerland in February of 1991 and had seen Nicholas in accordance with an agreement between the parties that father would take Nicholas to California for a visit. Nicholas did not want to go to California with father who decided not to force the issue and returned without the boy. Mother concluded her declaration by stating that it would be very difficult for her to come to California because she has a newborn son to care for. "In addition, I have no money to pay the travel and lodging expenses. I have been unemployed since November, 1990, because of my pregnancy and the birth of my son, and my husband and I have difficulty just meeting our basic living expenses on his income alone."

At the commencement of the hearing on June 14, 1991, respondent court announced that it was going to discharge the order to show cause regarding contempt and turned to the motion to stay or dismiss on the ground of inconvenient forum. No further declarations or testimony were offered. In denying the motion, the court found that Switzerland was the home state of Nicholas and that Nicholas had a closer connection to Switzerland than California. The court reasoned that the primary issue is visitation between Nicholas and his father in California and that the information about father and his relationship with Nicholas during his visits to California is more readily available in California. The court further reasoned that, since the Uniform Child Custody Jurisdiction Act (Uniform Act) provides for the payment of expenses of a party who must attend from outside California, mother's financial condition would not be a significant factor.[2]

The instant petition was filed on July 15, 1991. In opposition to the petition, father stated that mother had failed to disclose that a judgment had recently been obtained in Switzerland. Father has since furnished this court with a translated portion of the judgment. It appears from this portion that mother had asked the Swiss court to modify the visitation rights of father to allow visitation rights to be exercised exclusively in Switzerland. The Swiss court granted a "temporary modification" based on the finding that an

---

[2] Civil Code section 5160, subdivision (3), provides: "If a party to the proceeding who is outside this state is directed to appear . . . or desires to appear personally before the court with or without the child, the court may require another party to pay to the clerk of the court travel and other necessary expenses of the party so appearing and of the child if this is just and proper under the circumstances."

emergency existed and that the emotional well-being of the child required that he not be separated from his mother for a long period of time in order to see his father in the United States.[3]

We issued our alternative writ. Father has requested that this court consider its informal opposition and letters to the court in lieu of a formal return.

## DISCUSSION

■ "The Uniform Child Custody Jurisdiction Act (the Uniform Act/ UCCJA) ([Civil Code] § 5150 et seq.) is the exclusive method in California for determining subject matter jurisdiction in custody cases. (*People* v. *Beach* (1987) 194 Cal.App.3d 955, 963 [240 Cal.Rptr. 50]; *Plas* v. *Superior Court* (1984) 155 Cal.App.3d 1008, 1013 [202 Cal.Rptr. 490].)" (*In re Gloria F.* (1989) 212 Cal.App.3d 576, 581 [260 Cal.Rptr. 706, 83 A.L.R.4th 729].)[4]

California obtained jurisdiction for the initial child custody decree under section 5152, subdivision (1)(a), as Nicholas's home state. After Nicholas was removed to Switzerland, California's jurisdiction to modify its decree depended upon meeting the condition described in section 5152, subdivision (1)(b), as follows: "(b) It is the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, or (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships." (*Kumar* v. *Superior Court* (1982) 32 Cal.3d 689, 696-697, fn. 7 [186 Cal. Rptr. 772, 652 P.2d 1003].)

Section 5156 describes the process under which a court may refuse to exercise jurisdiction even where a basis for jurisdiction exists. The section provides in relevant part:

---

[3]The court and the parties were aware that an action had been commenced in Switzerland by mother since father attached a copy of the Swiss pleadings to a brief filed in connection with another motion in the matter we are now considering. Real party in that pleading informed respondent court that prior to December 18, 1990, he had received a citation ordering him to appear in a Swiss tribunal on April 17, 1991. Real party did not appear before the tribunal and, in fact, obtained a stipulation that he would not be served while he went to Switzerland in February of 1991. Respondent court apparently has not been in contact with the Swiss court and has not been made aware of the action taken by the Swiss court. In determining whether respondent court abused its discretion in denying the motion to stay or dismiss on inconvenient forum grounds, we do not take into consideration the fact that the Swiss court has acted to modify visitation, a fact not before respondent court.

[4]All statutory references hereafter are to the Civil Code.

 

"(1) A court which has jurisdiction under this title to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

". . . . . . . . . . . . . . . . . . . . . .

"(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

"(a) If another state is or recently was the child's home state.

"(b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.

"(c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state.

"(d) If the parties have agreed on another forum which is no less appropriate.

"(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in Section 5150."

 Mother does not contend that California does not have continuing jurisdiction to modify its custody decree. Mother maintains only that respondent court abused its discretion in refusing to relinquish its jurisdiction on the ground that California is an inconvenient forum.

 "Absent other considerations the general rule is that 'the court of the forum should ordinarily refuse to reopen the question of the custody of a [nonresident] child whose custody is vested under an existing decree in a nonresident parent.' [Citations.]" (*Allison* v. *Superior Court* (1979) 99 Cal.App.3d 993, 1002 [160 Cal.Rptr. 309]) Professor Bodenheimer, reporter for the special committee which drafted the Uniform Act, recognized this general rule in pointing out that the new home is usually the better jurisdiction to determine whether a change of custody is in order. (Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA* (1981) 14 Family L.Q. 203, 222.) However, Professor Bodenheimer

went on to caution against an ill-considered application of the general rule in a situation analogous to that in the instant case, explaining: "However, caution is in order before permitting a frequently followed practice to be converted into a hard and fast rule of law which might be mechanically applied. The inconvenient forum rule involves the exercise of sound discretion which must assess the special circumstances of each case. Often the relinquishment of jurisdiction is appropriate or even necessary, but this is not always the case. ¶ In some cases . . . visitation may have been frustrated after the child moved from the state, and the custodial parent is seeking to eliminate or restrict visiting rights in a court of the new home state. In such a situation, the noncustodial parent may well counter with a petition to reaffirm visitation rights or for a change of custody in the state of continuing jurisdiction to ward off the loss of all contact with the child. . . . Declining jurisdiction under such circumstances and requiring the noncustodial parent to seek relief in the new home state would be decidedly unfair, especially if that state had already shown an inclination toward terminating visitation rights." (*Id.* at pp. 222-223, fns. omitted.)

■ Were the only issue in this motion to change custody the competence of the custodial parent, we would have to find an abuse of discretion in exercising jurisdiction in California where there is little if any evidence as to this issue in California. (See *Clark* v. *Superior Court* (1977) 73 Cal.App.3d 298 [140 Cal.Rptr. 109].) However, as far as can be told at this stage of the case, father does not challenge the capacity of mother to maintain a home for Nicholas. He contends only that custody should be modified because he is unable to maintain contact with his child. Evidence pertinent to this contention is available in California not only in the evidence to which respondent court referred but also in evidence as to whether father will be able to adequately maintain contact with Nicholas by visiting in Switzerland until Nicholas is able to spend time in California as the parties agreed.

We recognize that, after the extent of the loss of contact is examined, the determination of whether custody should be modified because of the visitation problems may well require evidence which could more conveniently be explored in Switzerland. For example, evidence as to the efforts to maintain English as Nicholas's primary language, and the success of these efforts; evidence as to the effect upon Nicholas of visitation in California; and evidence as to whether Nicholas's best interest would be served by remaining in the custody of his mother despite the visitation problems. However, the Uniform Act itself suggests means of mitigating the inconvenience of having witnesses and parties living outside the forum state. Section 5167 provides that the court may direct that evidence be taken by deposition

outside the forum state[5] and section 5168 provides for a hearing outside the state and the use of a transcript of proceedings held outside the state.[6] This latter provision might well be appropriate in the instant case since a court in Switzerland has already exercised jurisdiction. We note in conjunction with this latter fact that the Uniform Act requires respondent court to inform the Swiss court of the action in California, and we assume that the California court will fulfill this responsibility.[7] (See *Plas* v. *Superior Court* (1984) 155 Cal.App.3d 1008, 1021 [202 Cal.Rptr. 490].)

Because the issue of inconvenient forum involves a discretionary decision upon a complex, highly individualized factual matter, the determinations of courts in other cases, while providing guidance, can rarely lead to a resolution of a separate case. Thus, while we have carefully studied the cases of *Plas* v. *Superior Court*, *supra*, 155 Cal.App.3d 1008, cited to us by mother, and *Allison* v. *Superior Court*, *supra*, 99 Cal.App.3d 993, cited to us by father, we do not agree with either party that these cases are controlling.

Since respondent court denied the motion to stay or dismiss on the ground of inconvenient forum because substantial evidence on a significant issue is

[5]Section 5167 provides: "In addition to other procedural devices available to a party, any party to the proceeding or a guardian ad litem or other representative of the child may adduce testimony of witnesses, including parties and the child, by deposition or otherwise, in another state. The court on its own motion may direct that the testimony of a person be taken in another state and may prescribe the manner in which and the terms upon which the testimony shall be taken."

[6]Section 5168 provides:

"(1) A court of this state may request the appropriate court of another state to hold a hearing to adduce evidence, to order a party to produce or give evidence under the procedures of that state, or to have social studies made with respect to the custody of a child involved in proceedings pending in the court of this state; and to forward to the court of this state certified copies of the transcript of the record of the hearing, the evidence otherwise adduced, or any social studies prepared in compliance with the request. The cost of the services may be assessed against the parties or, if necessary, ordered paid by the state.

"(2) A court of this state may request the appropriate court of another state to order a party to custody proceedings pending in the court of this state to appear in the proceedings, and if that party has physical custody of the child, to appear with the child. The request may state that travel and other necessary expenses of the party and of the child whose appearance is desired will be assessed against another party or will will otherwise be paid."

[7]Section 5155, subdivision (3), provides: "If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with Sections 5168 through 5171. If a court of this state had made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. *If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum.*" (Italics added.)

available in California, we cannot say that mother has conclusively established that respondent court should have relinquished its jurisdiction. ■ "A trial court's exercise of discretion will be upheld if it is based on a 'reasoned judgment' and complies with the '. . . legal principles and policies appropriate to the particular matter at issue.' [Citations.]" (*Bullis* v. *Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 815 [148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642].)

The alternative writ is discharged, and the petition is denied.

Perley, J., and Reardon, J., concurred.